**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ) <br> JIMMY TORRES, ) <br> ) <br> Defendant. ) <br> _____ ) | Case No. 2:12-cr-00154-KJD-GWF <br><br> **FINDINGS &** <br> **RECOMMENDATIONS** <br><br> **Motion to Suppress (#23)** |

This matter is before the Court on Defendant Jimmy Torres's Motion to Suppress Physical Evidence and Statements Due to an Impermissible Search and Seizure (#23), filed on May 7, 2013. The Government filed its Response in Opposition to Defendant's Motion to Suppress (#26) on May 24, 2013.  Defendant filed a Reply (#32) on June 4, 2013.  The Court conducted an evidentiary hearing in this matter on June 26, 2013.

The indictment charges Defendant Jimmy Torres with possession of a firearm by a convicted felon in violation of 18 U.S.C. §922(g)(1) and §924(a)(2).  The indictment arises from an April 24, 2012 inventory search of a vehicle occupied by Defendant Torres during which a handgun was found in the air cleaner box in the engine compartment.  Defendant argues that the impoundment and inventory search of the vehicle violated the Fourth Amendment, and that the fruits of the search, including the handgun and the subsequent statements of Defendant and his girlfriend, should be suppressed.

**FACTUAL BACKGROUND**

On April 24, 2012, at approximately 5:30 P.M., an individual called 911 and reported that a "rolling" domestic violence or battery was occurring in a motor vehicle traveling eastbound on

Charleston Boulevard near Marion Drive in Las Vegas, Nevada. The caller reported that the male driver was pulling the hair of the female passenger. The caller described the vehicle as a navy blue Saturn Vue. The caller further reported observing the vehicle turn into the Villa East Apartment complex at which point the caller lost visual contact with the vehicle.

Officer Jason Evans of the Las Vegas Metropolitan Police Department (LVMPD) was working as a patrol officer on April 24, 2012 and responded to dispatch's notification of the call. Officer Evans testified that he was the first officer to arrive at the Villa East Apartments. Officer Joseph Donaldson arrived shortly after him. Officer Evans observed a vehicle matching the 911 caller's description in the northwest parking area of the apartment complex. The rear of the vehicle was parked in or near a "red zone." Photographs of the vehicle show a red curb to its rear, but it is not easy to determine the distance between the vehicle and the curb. *See Government's Exhibits 1 and* 2.

There were two occupants in the vehicle, a male driver and a female passenger. Officer Evans made contact with the driver of the vehicle, Defendant Jimmy Torres. Officer Evans testified that he smelled the odor of alcohol on Mr. Torres's breath. Officer Evans had Mr. Torres step out of the vehicle to investigate a possible driving under the influence of alcohol (DUI) offense. Officer Evans performed a pat down search on Mr. Torres's person during which he felt a large object in Defendant's pocket. This turned out to be a sock containing a large roll of money. Officer Evans administered the "walk and turn" and "one-leg stand" field sobriety tests to Defendant Torres, both of which he failed. Officer Evans thereupon arrested Mr. Torres for DUI and placed him in handcuffs.

After placing Defendant under arrest for the DUI charge, Officer Evans proceeded to investigate the reported domestic violence offense. Officer Evans obtained a records check on Mr. Torres which showed that he was a convicted felon. It was also determined that the passenger, Cara Young, did not have a valid driver's license and therefore could not legally drive the vehicle. Officer Evans testified that if the registered owner is present when the driver is arrested and can lawfully drive the vehicle, he or she will be permitted to do so and the vehicle will not be impounded or towed. It is also LVMPD policy to try to contact the registered owner, if he or she is

not present, to determine if the registered owner can retrieve the vehicle to avoid it being towed. Officer Evans testified that if the vehicle has a Nevada license plate or registration, the officer will contact the Nevada Department of Motor Vehicles (DMV) to identify the registered owner and attempt to contact him or her. If the vehicle has a California license plate, as the subject vehicle did, then the officer will contact the California DMV. Officer Evans could not recall who the registered owner of the subject vehicle was or whether an attempt was made to contact the registered owner before the decision was made to impound the vehicle and conduct an inventory search.

Officer Evans testified that Officer Donaldson performed the inventory search of the vehicle. A hydraulic tool and other tools were found during the inventory search. The hydraulic tool appeared to be designed to pry open or separate material. Officer Evans stated that it could be used as a burglary tool. Rolls of coins were also found in the vehicle's trunk. The money found on Mr. Torres's person and in the trunk, together with the tools, raised Officer Evans' suspicions.

Officer Evans testified that the purpose of an inventory search is to document the condition and contents of the motor vehicle to protect the police department against claims of lost or stolen property and to protect the safety of the police. He estimated he has performed more than 200 inventory searches during the five years he has been employed as a patrol officer by the LVMPD. He testified that it is the policy or practice to always search the engine compartment of the vehicle during an inventory search. It is also the practice to search the air cleaner box in the engine compartment if it is accessible. Officer Evans stated it is common for persons to hide items in the air cleaner box.

Officer Joseph Donaldson testified that he arrived at the apartment complex shortly after Officer Evans. He observed that the suspect vehicle was "backed into" the middle of the parking area, but was not in a parking stall. There were parking stalls on either side of the vehicle. Officer Donaldson initially testified that the vehicle was backed up against the curb, but upon viewing the photographs in evidence, *Government's Exhibits 1* and *2,* he stated the rear of the vehicle was not near the curb. He stated the curb was red which indicates it was either near a fire hydrant or the area was for emergency parking. Officer Donaldson stated that as a police officer, he cannot allow

1  a parked vehicle to remain in an area that impedes emergency services.

2  Officer Donaldson testified that Mr. Torres did not have a driver's license and was not the
3  registered owner of the vehicle. The female passenger, Cara Young, was not the registered owner
4  of the vehicle and there was some issue regarding her driver's license. Officer Donaldson did not
5  recall to whom the vehicle was registered. Neither Mr. Torres nor Ms. Young resided in the
6  apartment complex. Officer Donaldson testified that when there is no person at the scene who is
7  able to lawfully drive the vehicle away, it is towed. Officers generally attempt to contact the
8  registered owner of the vehicle if he or she is not present. A vehicle can be released to the
9  registered owner if the officers are able to contact him and he can come to the scene to retrieve the
10 vehicle. Because neither Mr. Torres nor Ms. Young were able to drive the vehicle away, the
11 officers decided to impound the vehicle.

12 Officer Donaldson testified that he performed the inventory search of the subject vehicle. It
13 is his standard practice to begin an inventory search at the front of the passenger compartment on
14 the driver's side. He then searches the rear seat area on the driver's side, followed by the trunk.
15 Next, he searches the passenger compartment on the passenger side of the vehicle. He finishes by
16 searching the vehicle's engine compartment. Officer Donaldson stated that he searches any
17 containers that can be opened and no containers are considered off limits during an inventory
18 search. He indicated he followed this practice in searching the subject vehicle.

19 Officer Donaldson testified that during an inventory search he inspects the engine
20 compartment to make sure there is an engine, battery, radiator, and no loose or missing items. He
21 stated that among the items he may find during the search of an engine compartment are weapons,
22 contraband, illegal narcotics, tools, screwdrivers or rags. Officer Donaldson also testified that he
23 normally opens and searches the air cleaner box in the engine compartment. He has been taught
24 that criminals commonly hide things in air cleaner boxes, such as money, narcotics or weapons, and
25 he has previously found contraband and weapons in an air cleaner box.

26 Officer Donaldson testified that the air cleaner box in the subject vehicle consisted of a
27 plastic top and base which were secured together by latches. He released the latches, removed the
28 top and found a handgun and a holster in the box as shown in the photograph admitted into

evidence. *See Government's Exhibit 3*. Upon discovering the firearm, Officer Donaldson stopped the inventory search. The officers called the LVMPD's firearms detail and one of their officers responded to the scene. A records check was conducted on the firearm which revealed that it had been stolen during a burglary earlier that day. Money was also reportedly stolen during the burglary.

Detective Robert Orth also testified at the hearing. Detective Orth was assigned to the firearms investigation section on April 24, 2012. Detective Orth testified that he went to the apartment complex in response to the officer's report that a firearm had been discovered during the inventory search of a vehicle and that the driver of the vehicle was a convicted felon. When he arrived at the apartment complex, he observed the subject vehicle in the northwest parking area of the complex. The vehicle was backed toward a curb, but was "quite a distance" from the curb. The vehicle was facing south with its rear toward the curb. There were vehicles in parking spaces to the west and east of the subject vehicle. Detective Orth testified that the subject vehicle would have blocked the drivers of the adjacent vehicles from exiting their parking places if they had attempted to do so. The subject vehicle was essentially parked in the middle of the parking area.

Detective Orth testified that he spoke with the vehicle passenger, Cara Young, who told him that the subject vehicle was hers. However, the records check that had been conducted was not clear as to who owned the vehicle.[1] The vehicle registration was expired. Ms. Young also did not have a valid driver's license. Given this, Detective Orth testified that Ms. Young would not have been permitted to drive the vehicle away even if she was the registered owner of the vehicle. Detective Orth subsequently applied for and obtained a telephone search warrant to seize the firearm found in the vehicle.

The Defendant served a subpoena on the Nevada Department of Motor Vehicles to produce the records regarding the subject vehicle. Those records were produced by the Department's

---

[1] Detective Orth's telephonic search warrant affidavit stated: "A records check of the vehicle revealed that California 6GWK291 was expired with last known owner being a collection company." *Motion to Suppress (#23), Exhibit A, "Application and Affidavit for Search Warrant,"* pg. 00028.

custodian and were admitted into evidence. *Defendant's Exhibit C.* The records include documents obtained from the California Department of Motor Vehicles. These records indicate that the California registration for the vehicle was expired on April 24, 2012. Cara Young appears to be the last registered owner identified in the records. Citifinancial Auto was listed in the documents as the legal owner or lien holder on the vehicle. Citifinancial Auto's address was identified as P.O. Box 3449, Coppell, Texas, 75019.

The Las Vegas Metropolitan Police Department has two written policies dealing with the impoundment of motor vehicles. Section 5/202.20 of the policy manual deals with the disposition of an arrested person's vehicle. It states in pertinent part as follows:

> The arresting officer has the option of allowing the arrestee, provided they are the registered owner, to leave his vehicle parked or have it towed if the following conditions exist:
> 1. The arrestee is 18 years or older.
> 2. The arrestee is not under the influence of intoxicating liquors or drugs.
> 3. The vehicle is parked legally on the roadway or private property open to the public.
> 4. The vehicle is not needed for evidence.
>
> If the arrestee is not the registered owner, the officer will attempt to notify the registered owner that the vehicle in question will be towed if they do not come to the scene and take custody of their vehicle. The registered owner would be advised they need to respond in a timely manner (generally 30 minutes.)

*Defendant's Exhibit A, pg. 476.*

Section 5/204.06 of the policy manual also deals with vehicle impounds. *See Government's Exhibit 8*. It states that "[i]t is the policy of this department that to impound a vehicle without cause is strictly forbidden." It further states that vehicles may only be impounded "in the following circumstances." The policy lists 12 circumstances including the following:

> 1. Whenever a driver is arrested and is (sic) no physical or mental condition to turn the vehicle over to the custody and care of a relative or friend. (See 5/202.20) Such circumstances will be explained (sic) the Vehicle Impound Report or the Arrest Report.

The only other circumstances listed in Section 5/204.06 that might be applicable to this case are the following:

. . .

6. When ownership and rightful possession by the driver is in doubt. The facts and circumstances leading to this decision will be explained in an Officer's Report.

12. If there is not a licensed driver in the vehicle and it is not legally parked.

*Government's Exhibit 8.*

Section 5/204.06 also states that "[w]henever a vehicle is towed under the listed circumstances; a Vehicle Impound Report (LVMPD 503) will be completed." The section further states: "Impounding officers must thoroughly search vehicles and containers located therein per 5/200.04. Personal property must be inventoried on the Vehicle Impound Report (LVMPD 503).

The LVMPD policy manual also sets forth policies and procedures for inventory searches. It states as follows:

> Inventories -- An inventory is not a search for evidence of crime, but is justified to protect an owner's property while it is in the custody of the police, to ensure against claims of lost or stolen property, and to guard the police from danger.
>
> When a vehicle is lawfully impounded (See 5/202.20 and 5/204.06), an officer shall conduct an inventory search of that vehicle and containers found therein and report all personal property on the LVMPD 503, Vehicle Impound Report. If the inventory is part of a vehicle seizure (See 5/105.14), the personal property will be impounded and placed in the evidence vault.
>
> Impound/inventory involves two levels of decision making and action by the officer. There is the impoundment of the vehicle and the inventory search itself. Both of these two actions must be done pursuant to standardized criteria which limits the discretion of the officer and ensures that impound/inventory are legally performed and not a guise for a general exploratory search. In an inventory, all containers and their contents within a vehicle must be documented for the above stated policy reasons.

*Defendant's Exhibit A, pg. 442.*

Officer Donaldson prepared the Vehicle Impound Report. *Defendant's Exhibit B.* The stated reason for the impound was: "Driver arrested." *Id.* The Impound Report contains a list of 51 "Features" for a vehicle, including equipment or parts such as an engine, battery, bumpers, transmission, hubcaps, tires, car radio, jack, and trailer hitch or tow bar. It also includes items for listing damage to the front, rear or side of the vehicle. Officer Donaldson circled the Features on the Inventory Report applicable to the subject vehicle. The Inventory Report also has a box area to

1  list the personal property found in the vehicle.  In this box, Officer Donaldson listed a portable
2  puller kit, car battery, bolt cutters, 5 packs of hearing aid batteries, rolled nickles, quarters, dimes,
3  pennies, Prestone Anti-Freeze and miscellaneous clothes and papers.  The Inventory Report also
4  has a box for "Tapes/CDs (Give #)."  The number 18 was written in this box.  In a box entitled
5  "Additional Remarks/Vehicle Damage," Officer Donaldson wrote: "Vehicle is in bad repair, driver
6  side seat recliner is broken, rolled coins, puller kit and boltcutters were impounded by firearms Det.
7  Orth."

## DISCUSSION

"Because warrantless searches and seizures are *per se* unreasonable, the government bears the burden of showing that a warrantless search and seizure falls within an exception to the Fourth Amendment's warrant requirement." *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012) (internal citations omitted).  In *South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S.Ct. 3092, 3097 (1976), the Supreme Court held that as part of their community caretaking function, the police may, without a warrant, impound motor vehicles that "'jeopardize public safety and the efficient movement of vehicular traffic.'"  The police may also conduct an inventory search of the impounded vehicle for the purpose of protecting the owner's property while it remains in police custody, to protect the police against claims or disputes over lost or stolen property, and to protect the police from potential danger.  *Id.  See also United States v. Cervantes*, 703 F.3d at 1141, citing *Miranda v. City of Cornelius*, 429 F.3d 858, 864 (9th Cir. 2005).  "However, 'an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence.'" *Cervantes*, 703 F.3d at 1141, quoting *Florida v. Wells*, 495 U.S. 1, 4, 110 S.Ct. 1632.

Probable cause to believe that a driver has committed a traffic violation is not sufficient justification by itself to make the impoundment of a vehicle reasonable under the Fourth Amendment.  *Cervantes*, 703 F.3d at 1141.  The reasonableness of the impoundment depends on whether it fits within the "'authority of the police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience. . . .'"  *Id.*, quoting *Miranda v. City of Cornelius*, 429 F.3d at 864.

. . .

1       In *Miranda v. City of Cornelius,* the court further stated as follows:

> Whether an impoundment is warranted under this community caretaking doctrine depends on the location of the vehicle and the police officers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft. *See United States v. Jensen*, 425 F.3d 698, 706 (9th Cir. 2005) ("Once the arrest was made, the doctrine allowed law enforcement officers to seize and remove any vehicle which may impede traffic, threaten public safety, or be subject to vandalism."); *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1477, n. 4 (9th Cir. 1993) (impoundment of arrestee's car from private parking lot to "protect the car from vandalism or theft" was reasonable under community caretaker function). . . .

429 F.3d at 864, citing *Opperman*, 428 U.S. at 369.

      In *Colorado v. Bertine*, 479 U.S. 367, 375-76, 107 S.Ct. 738, 743 (1987), the defendant argued the impoundment of his vehicle was unconstitutional because police department regulations "gave the police discretion to choose between impounding his van and parking and locking it in a public parking place." In rejecting this argument, the Court stated that "[n]othing in *Opperman* or [*Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605 (1973)] prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity."

      In *United States v. Jensen*, 425 F.3d at 706, the court upheld the impoundment of the arrestee's vehicle based on the officer's testimony that the vehicle had been stopped on a rural road and was obstructing traffic. In *Hallstrom v. City of Garden City*, 991 F.2d at 1477, n. 4, the plaintiff was arrested after she pulled her vehicle into a private parking lot upon being signaled to stop by the police. The court held that the impoundment of the vehicle was justified to protect it from vandalism or theft. In *United States v. Caseres*, 533 F.3d 1064, 1075 (9th Cir. 2008), however, the court held that there was no community caretaking rationale for impounding the defendant's vehicle which was legally parked on a residential street two houses away from his home. The court found no reason for the police to move the vehicle from the location where the defendant had chosen to legally park it. Likewise, in *Miranda v. City of Cornelius,* the court held that there was no legitimate rationale for impounding a vehicle that was parked in the driveway of the owner. The court cited *United States v. Squires*, 456 F.2d 967, 970 (2d Cir. 1972) which held that the police did not have reasonable grounds to impound defendant's vehicle which was legally

parked in the parking lot behind his apartment house. Finally, in *United States v. Cervantes*, 703 F.3d at 1141-42, the court held that the police did not have reasonable grounds to impound the defendant's vehicle after he pulled over to the side of the street in a residential neighborhood in response the police officer's signal to stop. Although the vehicle was not close to defendant's residence, there was no testimony that it was parked illegally, posed a safety hazard, or was vulnerable to vandalism or theft.

In *Diomampo v. State*, 124, Nev. 414, 431-33, 185 P.3d 1031, 1042-43 (2008), the Nevada Supreme Court upheld the impoundment and inventory search of a motor vehicle that was parked in an unsecure location, obstructing traffic. Neither the driver nor the passenger had valid driver's licenses and neither person was the registered owner of the vehicle. The Las Vegas Metropolitan Police Department impound policy at issue in that case did not require the police to contact the registered owner of the vehicle prior to impounding it. The Court therefore held that the officer's failure to notify the vehicle owner prior to impounding the vehicle did not negate the validity of the inventory search.

In contrast to the police policy at issue in *Diomampo,* Section 5/202.20 of the LVMPD policy manual states that "[i]f the arrestee is not the registered owner, the officer will attempt to notify the registered owner that the vehicle in question will be towed if they do not come to the scene and take custody of their vehicle. The registered owner would be advised they need to respond in a timely manner (generally 30 minutes.)" *Defendant's Exhibit A, pg. 476.* Officers Evans and Donaldson confirmed that it is department policy to attempt to contact the registered owner, if not present, prior to impounding a vehicle. The registration on the subject vehicle was expired. According to the DMV records, Cara Young was the last registered owner of the vehicle. Ms. Young did not have a valid driver's license, however, and could not legally drive the vehicle. Citifinancial Auto was listed on the DMV records as the "Legal Owner" or "Lien Holder." *Defendant's Exhibit C*. The LVMPD manual does not require the police to contact the "legal owner," if different from the "registered owner" prior to deciding whether to impound a vehicle. The officers therefore had no duty under the LVMPD's policy to attempt to contact Citifinancial

Auto before impounding the vehicle.[2]

Neither the Defendant nor Ms. Young resided in the apartment complex where the vehicle was stopped. Officers Evans, Donaldson and Orth testified that the vehicle was not in a designated parking space and it was near a red zone. Detective Orth also testified that the vehicle blocked other vehicles from exiting their parking spaces. Under these circumstances, the officers' decision to impound the vehicle complied with Section 5/202.20 of the LVMPD policy manual and was reasonable under the Fourth Amendment.

As set forth in *South Dakota v. Opperman*, inventory searches of impounded vehicles, pursuant to standard procedures, are reasonable under the Fourth Amendment in order to protect the owner's property, protect the police against claims or disputes over lost or stolen property, and to protect the police from potential danger. 428 U.S. at 369, 96 S.Ct. at 3097. The Supreme Court has also approved the search of closed compartments or containers found in a vehicle as part of an inventory search. In *Opperman*, the Court held that it was reasonable to open the unlocked glove compartment. 428 U.S. at 375 n. 10, 96 S.Ct. at 3100 n. 10. In *Colorado v. Bertine*, the Court upheld the inventory search of the contents of a backpack found in a vehicle and of containers found inside the backpack. The Court stated that "[k]nowledge of the precise nature of the property helped guard against claims of theft, vandalism, or negligence. Such knowledge also helped to avert any danger to the police or others that may have been posed by the property." 479 U.S. at 373, 107 S.Ct. at 742. In support of this latter statement, the Court noted that the police officer testified that inventories are conducted, in part, to check for any dangerous items such as explosives or weapons. *Id.* at n. 5.

The concurring opinion by Justice Blackmun in *Bertine* stated the rationale for allowing an inventory exception to the Fourth Amendment warrant rule is that police officers are not vested with discretion to determine the scope of the inventory search. The absence of discretion ensures that inventory searches will not be used as a purposeful and general means of discovering evidence

---

[2] It is also questionable whether Citifinancial Auto, whose P.O. Box address was listed in Texas, could have been contacted and have then made arrangements to retrieve the vehicle within a reasonable time before it was impounded.

of crime. Justice Blackmun therefore stated that it is permissible for police officers to open closed containers only if they are following standard police procedures that mandate the opening of such containers in every impounded vehicle. *Bertine*, 479 U.S. at 373, 376-77, 107 S.Ct. at 743-44. In *Florida v. Wells*, 495 U.S. 1, 3-4, 110 S.Ct. 1632, 1635 (1990), however, the majority opinion noted that *Bertine* also stated that police are not prohibited from exercising some discretion in conducting inventory searches so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity. The Court stated that within these boundaries, a police officer may be allowed sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and the characteristics of the container itself. The Court further stated:

> Thus, while policies of opening all containers or of opening no containers are unquestionably permissible, it would be equally permissible, for example, to allow the opening of closed containers whose contents officers determine they are unable to ascertain from examining the containers' exteriors. The allowance of the exercise of judgment based on concerns related to the purpose of an inventory search does not violate the Fourth Amendment.

*Wells,* 495 U.S. at 4, 110 S.Ct. at 1635.

The written LVMPD policies admitted into evidence state that "Impounding officers must thoroughly search vehicles and containers located therein per 5/200.04." *Government's Exhibit 8*. Another part of the written policy states: "When a vehicle is lawfully impounded (See 5/202.20 and 5/200.06), an officer shall conduct an inventory search of that vehicle and containers found therein and report all personal property on the LVMPD 503, Vehicle Impound Report." *Government's Exhibit A, pg. 442*. The written policies do not explicitly state whether an inventory search should include the engine compartment. The Vehicle Impound Report, LVMPD 503, lists the engine, battery, and radiator as features to be checked or noted on the form, and therefore contemplates that the engine compartment will be inspected. Officers Evans and Donaldson also testified that it is standard practice to search the engine compartment during an inventory search.

The Ninth Circuit has not addressed whether a search of a vehicle's engine compartment is properly within the scope of an inventory search. Other circuits that have addressed the question, hold that it is. In *United States v. Lumpkin*, 159 F.3d 983 (6th Cir. 1998), a police officer

conducting an inventory search observed a tape-wrapped cylinder in the engine compartment which was later determined to contain methamphetamine. The officer testified that in every inventory search he had performed, he raised the hood of the vehicle to check for missing parts, and that a complete inventory of a vehicle's contents was standard procedure for the department. Although there was no written policy regarding the search of an engine compartment, the court held that the officer's testimony was "sufficient to establish that the search of the pick-up truck was conducted in good faith according to standard operating procedure." *Id.,* 159 F.3d at 987-88.

In *United States v. Lewis*, 3 F.3d 252 (8th Cir. 1993), the police discovered a box containing a large quantity of heroin hidden in the engine compartment. In rejecting the defendant's argument that the officers went beyond the scope of a permissible inventory search, the court stated: "Because Lewis had a bag of cocaine in his shirt pocket when he was arrested, the officers had ample justification to search all areas of the van where personal property might be found, to protect the public from persons who might find contraband drugs in the van." *Id*, 3 F.3d at 254, citing *South Dakota v. Opperman*, 428 U.S. 364, 376 n. 10, 369, 96 S.Ct. 3092, 3100 n. 10. In the referenced note in *Opperman*, the Court stated that it was reasonable for the officers to search the vehicle's unlocked glove compartment because the inventory search is also performed for the protection of the public from vandals who might find a firearm, or contraband drugs. In *United States v. Pappas*, 452 F.3d 767 (8th Cir. 2006), the Eighth Circuit also upheld the reasonableness of an inventory search in the engine compartment of a vehicle. In that case, the officer saw a .38 caliber semiautomatic pistol "in the recess by the radiator near the driver's side headlight." Citing its earlier decision in *Lewis*, the court noted that the police officers had discovered a bullet in defendant's pocket during the search incident to his arrest. "Because the police found the bullet, they had every reason to search any part of the vehicle which might contain a gun." *Id.*, 452 F.3d at 772. The court also noted that the police had received a tip that the defendant might be carrying a firearm.

The decisions in *Lewis* and *Pappas* arguably blur the line between conducting an inventory search pursuant to the community caretaking function and conducting a warrantless search for evidence of criminal activity. However, an officer's suspicion that contraband may be present in

13

the vehicle does not invalidate an otherwise lawful inventory search. *United States v. Matthews*, 591 F.3d 230, 235 n. 7 (4th Cir. 2009), citing *United States v. Cox*, 955 F.2d 42 (4th Cir. 1992); *United States v. Lewis*, 3 F.3d 252, 254 (8th Cir. 1993); and *United States v. Cecala*, 203 F.3d 836 (10th Cir. 2000) (unpublished decision). In accordance with Supreme Court and Ninth Circuit law, the search of a motor vehicle's engine compartment as part of an inventory search is reasonable so long as it is made pursuant to the standard criteria for inventorying the contents of an impounded vehicle. Here, an inspection of the engine compartment is clearly contemplated by the LVMPD Vehicle Impound Report form. Officers Evans and Donaldson also testified that they always search the engine compartment as part of an inventory search. The search of the engine compartment was therefore reasonable under the Fourth Amendment.

Defendant, however, challenges the reasonableness of Officer Donaldson's search of the engine's air cleaner box. In support of this argument, Defendant cites *State v. Greenwald*, 109 Nev. 808, 809-11, 858 P.2d 36, 37-38 (1993) and *United States v. Best*, 135 F.3d 1223, 1225 (8th Cir. 1998). In *Greenwald*, the Nevada Supreme Court affirmed the district court's decision that a highway patrol trooper's "inventory search" of defendant's motorcycle violated the Fourth Amendment. The court found it "hard to escape the conclusion that the trooper was searching for contraband when he went about examining the contents of the gas and oil tanks and even dismantling a flashlight, searching for the kinds of items the trooper thought might be secreted in a flashlight cylinder." 109 Nev. at 809, 858 P.3d at 37. The trooper also searched the pockets of all clothing found on the motorcycle and "made a complete internal inspection of the buckled saddlebags affixed to the motorcycle." *Id.* The Court further noted that although the trooper filled out inventory sheets, the only items listed on the inventory sheets was the firearm, holster, cartridge clip and LSD that he found in the vehicle. The inventory did not list numerous items of personal property that were on or in the motorcycle and should have been listed in an inventory report. Because the trooper failed to produce an inventory, which is the purpose of conducting an inventory search, the Court held that he did not, in fact, conduct a legitimate inventory search. *Id.*, 109 Nev. at 810, 858 P.3d at 38, citing *Florida v. Wells*, 495 U.S. at 4, 110 S.Ct. at 1635.

. . .

In *Weintraub v. State*, 110 Nev. 287, 289, 871 P.2d 339, 340 (1994), the Court also struck down a purported inventory search where the inventory report only documented eight of the approximately one hundred items of personal property located in the vehicle. The court also noted that the officer failed to include in the purported inventory the most valuable items of personal property found in the vehicle, such as the defendant's wallet.

In *United States v. Best*, a highway patrol trooper allegedly conducted an inventory search of defendant's rental vehicle to protect the government and the wrecker from false claims. While checking the automobile, the trooper observed that the right front and rear windows would not roll down properly. The trooper shined his flashlight into right window to see if there was an obstruction and observed what appeared to be marijuana. The officer then removed the inside door panel and found a bundle of marijuana. In holding that the search was unreasonable, the court stated that the purposes for conducting inventory searches do not justify an unlimited search of an automobile. The court quoted the Tenth Circuit's decision in *United States v. Lugo*, 978 F.2d 631, 637 (10th Cir. 1992) which stated that "[a]lthough the permissible scope of an inventory search has not been well-defined, searching behind the door panel of a vehicle does not qualify as 'standard police procedure,' and does not serve the purpose of 'protecting the car and its contents under any normal construction of those terms, at least on the evidence in the record." *Best*, 135 F.3d at 1225. The court also stated that the defendant would not have had a legitimate claim for the protection of property hidden inside the door panel, and therefore the trooper "did not have a legitimate interest in seeking such property." *Id.*

The air cleaner box in an engine compartment is not a place one would reasonably expect a vehicle owner to store personal property other than the air cleaner. The air cleaner is not listed as one of the Features on the LVMPD Vehicle Impound Report form that should be checked to verify the vehicle's equipment or condition at the time of impound.[3] Nor did Officer Evans or Donaldson testify that the air cleaner box is searched for the purpose of verifying that the air cleaner is present.

---

[3] As Defendant notes, the cost of an air cleaner is fairly minimal. *Motion (#23), pg. 10, n. 3.*

Instead, the officers testified they search the air cleaner box because it is a place in which firearms or contraband may be hidden and because such items have been found during other searches of air cleaner boxes.

The search of the air cleaner box cannot reasonably be justified for the purpose of protecting the owner's property or to protect the police against claims or disputes over lost or stolen property. *See Best, supra.* The search of the air cleaner box, however, can be justified for the protection of the police or others from danger. *See Bertine,* 479 U.S. at 373, 107 S.Ct. at 742 (search of backpack justified, in part, to protect police from danger). The officers testified that they have found firearms in other air cleaner boxes. The air cleaner box on the subject vehicle was large enough to contain a pistol and holster. *See Government's Exhibit 3.* There would, in fact, have been room for additional articles. The box appears to be easily accessible and can be opened by simply releasing the latch(es). As the court in *United States v. Lugo* stated, the permissible scope of an inventory search has not been well defined. There is not a significant difference, in terms of intrusion, between opening the air cleaner box and closely inspecting the recesses or voids in an engine compartment where firearms or other contraband may be located. *See Lumpkin* and *Pappas, supra.* Officer Donaldson did not open or remove panels or other parts of the vehicle which are not designed to be opened or removed. These facts distinguish this case from *Best* and *Lugo, supra.* The search of the air cleaner box in this case may be at the boundary of what may be permissibly searched during an inventory search. It does not, however, cross that boundary.

This case is also distinguishable from *Greenwald* and *Weintraub.* Officer Donaldson completed an Vehicle Impound Report. The report listed the personal property Officer Donaldson found during the inventory search, with the exception of the firearm which was seized as criminal evidence. Officer Donaldson also completed the report checklist regarding the equipment and the condition of the vehicle. There is no evidence that Officer Donaldson failed to include in the Vehicle Inventory Report significant personal property that should be included if a legitimate inventory search is performed.

. . .

. . .

**CONCLUSION**

The Court concludes that the officers reasonably and lawfully impounded the vehicle occupied by Defendant Torres on April 24, 2012 and performed a reasonable inventory search of the vehicle, which included opening the air cleaner box in the engine compartment. Accordingly,

**RECOMMENDATION**

**IT IS RECOMMENDED** that Defendant's Motion to Suppress Physical Evidence and Statements Due to an Impermissible Search and Seizure (#23) be **denied**.

**NOTICE**

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983 ).

DATED this 10th day of July, 2013.

GEORGE FOLEY, JR.
United States Magistrate Judge